## The Monitor Stove Co. *v.* The Williamson Heater Co. et al.

*Injunction—Unfair competition—Allegations of conspiracy to injure and destroy business—Evidence only of injury from competition by rival concern—Competitor wrongfully obtains customers list and sales information—Use enjoined as unfair trade advantage.*

1. Injunction will not lie to restrain a competing manufacturing company from continuing a certain course of business, alleged to be in pursuance of a conspiracy to injure and destroy the business of the plaintiff, where the evidence fails to disclose any conspiracy on the part of the defendant to injure or destroy the plaintiff's business, but tends to show that the injury, if any, is only such as might result from keen competition between the two rival manufacturing concerns.

2. Where a list containing names and addresses of customers of a commercial concern and also information as to sales made to various customers therein named is wrongfully obtained by a competing company, the use of such list by such competing company in soliciting the trade and business of persons named upon such list is an unfair trade advantage and may be restrained by a court of equity for such length of time as will prevent any injustice that would arise from the use of the same.

(Decided May 18, 1923.)

Appeal: Court of Appeals for Hamilton county.

*Messrs. Maxwell & Ramsey; Mr. Joseph S. Graydon; Mr. William R. Wood,* and *Mr. G. H. Hermerding,* for plaintiff.

*Messrs. Moulinier, Bettman & Hunt; Messrs. Dinsmore, Shohl & Sawyer,* and *Mr. A. C. Shattuck,* for defendants.

CHITTENDEN, J. The petition in this action sets forth two causes of action. In the first a judgment for damages was prayed, and in the second, based upon the same allegations of fact, an injunction was sought restraining the defendants from continuing a certain course of business which was alleged to be in pursuance of a conspiracy to injure and destroy the business of the plaintiff. The second cause of action, only, was tried in the court of common pleas, and a final decree was entered therein, from which the defendants prosecute an appeal to this court. The case was tried in this court upon a transcript of the evidence introduced at the trial in the court of common pleas. This consists of five volumes of typewritten matter and two large volumes of exhibits, together with a large number of exhibits attached to a chart.

The plaintiff and the defendant Williamson Heater Company are large manufacturers of heating appliances. One of their products is a heating device known as a pipeless furnace. This action relates to the manufacture and sale of the pipeless furnace. It appears that the plaintiff began manufacturing a furnace known to the trade generally as a triple-casing pipeless furnace, which was designated by the trade mark "Caloric." During the time this furnace was being introduced to the trade, and up until the fall of 1919, Louis D. Woodrough was president and general manager of the plaintiff company. William L. McGrath was its sales manager. Kearney McCann was the traveling sales manager, and William J. Doyle and John J. Wollenhaupt were at the head of its engineering department. In October, 1919, serious dissension arose among the officers and certain em-

ployes of the plaintiff company. This resulted in taking from Woodrough his power and authority as president and general manager of the company, on October 27, and on November 11 his resignation was accepted by the board of directors. The resignation of Mr. McGrath was also accepted about the same time, and McCann likewise withdrew from the organization.

The plaintiff charges that thereafter, in the month of August, 1920, these three former employes and officers of the Monitor Stove Company entered into a conspiracy with the Williamson Heater Company, A. W. Williamson, and W. C. Williamson, for the purpose of destroying the business of the plaintiff, together with its good will, which good will had been built up in part through the efforts of Woodrough, McGrath and McCann, and Doyle and Wollenhaupt. It is alleged that some time prior to October, 1920, the defendants Doyle and Wollenhaupt joined in the conspiracy to destroy the business of plaintiff. It may be stated in a general way that the plan for accomplishing this result, as alleged by the plaintiff, was by circulating advertising matter in which were statements that the defendant Woodrough was "the father of the pipeless industry," that Doyle was "the most successful designer in the history of the pipeless furnace," and other statements of similar import, which were calculated to deceive the public and give the impression that the success and utility of the triple-casing pipeless furnace had been attained and developed through the efforts and at the expense of the Williamson Heater Company, whereas the plaintiff claims the fact to be that all of the experience and skill that

Woodrough and Doyle had in the construction of pipeless furnaces was acquired through their connection with the Monitor Stove Company.

It is also claimed by the plaintiff that the defendant company obtained a half interest in a useless patent for a furnace and that it thereupon fraudulently and falsely advertised that it was the original patentee of the furnace containing the air space or so-called triple-casing. The plaintiff also alleges that the defendants wrongfully obtained possession of catalogues, circulars and other advertising matter used by plaintiff, and imitated the same, and made use of such printed matter in the selling of defendant company's furnaces. The plaintiff also alleges that the defendant company made improper use of records and information which came into the possession of Woodrough, McGrath, McCann, Doyle and Wollenhaupt while they were employes of the plaintiff, relating to the manufacture, improvement and selling methods of the plaintiff, and that the use of such confidential information constituted a fraud upon the plaintiff.

It is further alleged that the defendants unlawfully obtained possession of a list of dealers of the plaintiff who prior to November, 1919, had purchased and sold the plaintiff's product, and that they made use of such list for the purpose of breaking down the selling organization of the plaintiff and securing the services of plaintiff's dealers and agents. It is also alleged that the defendants made a concerted attack upon the entire selling organization of the plaintiff company, and by solicitation and harassing of such salesmen and dealers endeavored to break down the selling organization of plaintiff company and thus

inflict irreparable injury upon plaintiff. This, in a general way, states the claims of the plaintiff.

The defendants by their answer deny these allegations of conspiracy and unfair competition and any attempt or intent upon their part to injure or destroy the business of the plaintiff company.

Counsel for both plaintiff and defendants have argued the case, both orally and by printed brief, most learnedly and with distinguished ability. The printed briefs disclose that counsel for all parties have made wide and careful research among the authorities bearing upon the questions involved, and the case has been most earnestly and thoroughly presented to the court. We have carefully considered the arguments and have read the voluminous record and briefs, and we think it not improper to state that we have given some ten days to the consideration of this case, to the exclusion of all other business during that time. The statement that has been made as to the large amount of evidence introduced and the extensive briefs filed will in itself indicate that it is not possible, within the reasonable limits of an opinion, to enter into any detailed discussion of the evidence.

We find from the evidence that the defendants, Woodrough, McGrath, McCann, Doyle and Wollenhaupt, did not leave the employ of the plaintiff company because of any conspiracy, understanding or agreement with the defendants, the Williamson Heater Company, A. W. Williamson, or W. C. Williamson, but that their relations with the plaintiff were terminated solely because of the very serious dissensions that had arisen within the organization of the Monitor Stove Company.

In order to prove a conspiracy the evidence introduced covered a very wide field. Counsel for plaintiff endeavored to prove the conspiracy by making proof of a large number of acts which it was contended would disclose that such conspiracy did in fact exist. We have carefully read all of this evidence and reach the conclusion that it entirely fails to show that there was any conspiracy among the defendants for the purpose of destroying or injuring the business and good will of the plaintiff company. The only injury that might have been contemplated was such as naturally would follow the aggressive campaign inaugurated by the Williamson Heater Company and the other defendants for the sale of their pipeless furnace. The injury, if any, was only such as might result from keen competition between two rival manufacturing concerns.

It is contended by the defendants that the allegations of the plaintiff of the existence of a conspiracy added nothing to the real issue in the case; that, in any event, the case was nothing more than an action to prevent unfair trade competition. We need not discuss the authorities cited by the defendants in support of this contention, in view of the fact that we have found from the evidence that no conspiracy existed.

It is charged by the plaintiff that defendants in their advertising matter were wrongfully appropriating the reputation of Woodrough and Doyle, established while in the service of the plaintiff. The first instance complained of was in sending out to the trade a circular letter under date of August 25, 1920, purporting to be signed by Woodrough, McGrath and McCann. This letter con-

tained upon it reproductions of photographs of Woodrough, McGrath and McCann, and also a cut of the Williamson furnace. In this letter it was stated that the three men mentioned had been with the Monitor Stove Company for many years, Woodrough as president, McGrath as vice-president and McCann as sales-manager. These men had in fact occupied those positions at the time they severed their connection with the Monitor Company. The letter informed the dealers that they were now with the Williamson Heater Company, where they had an opportunity to combine their energy and ability with the best equipped and biggest furnace factory in the country, and advised those to whom the letter was addressed that their opportunity for service was now bigger than ever. It was suggested that the writers of the letter might call upon them, but, if not, they were asked to remember where these men were now located. This letter was written in a friendly form and contained no aspersions upon the Monitor Stove Company and only advertised the fact that they had changed their employment. Without citing any authorities it is sufficient to say that the issuing of this letter was entirely within the legal rights of the defendants whose names were signed to the letter, and also within the legal rights of the Williamson Heater Company. The fact that they had changed employment could in no way deprive them of the right to make use of the reputation they had established by their engagement in a similar business with another concern for many years. The language used in the various advertising matter sent out by the Williamson Heater Company, which referred to the employ-

ment by that company of the former officers and employes of the plaintiff company, has been analyzed by counsel and has been carefully scrutinized by the court. We are unable to find that it contains any misrepresentations with reference to the plaintiff or that it can fairly be construed as appropriating to the defendant company any of the good will of the plaintiff company.

Neither do we find that the defendant company has exceeded its legal rights in advertising the merits of its furnace, nor in comparing it with other pipeless furnaces. "A Study in Proportion," found on page 14 in "The Story of Homaker," about which a great deal was said in argument, we find to be only a legitimate comparison of what the defendant company claims to be the superior merit of its furnace over that of other pipeless furnaces, and it is not material that the orange lines fairly represent the "Caloric" furnace. The pamphlet called "The Story of Homaker" is so dissimilar in its general appearance, and in its contents, from the pamphlets of the plaintiff company that it can in no sense be said to be a copy or to operate in any way to deceive any who have occasion to read "The Story of Homaker." Indeed we find in none of the advertising matter of the defendant company anything that is subject to criticism as constituting unfair trade competition with reference to the plaintiff company. The use of the colors orange and black in its advertising matter is neither novel nor an infringement upon any right of the plaintiff company. The use of those colors in advertising is very common. A great many manufacturing and commercial concerns have made use of them for many years.

There is no evidence, and, indeed, it is perhaps not claimed that there is any evidence, tending to show that the defendant company was palming off its furnace as that of the plaintiff company. The two furnaces were quite dissimilar in their physical appearance, and the name given the plaintiff's furnace was "Caloric," while that of the defendant company was "Homaker." It is charged that "Homaker" was developed from confidential information and data secured from Doyle while he was in the employ of the plaintiff. We find that the evidence wholly fails to sustain this claim. It is shown that a contract for merger had been entered into between the two companies and that at that time one of the defendant company's furnaces was taken to the Monitor plant and was there tested in comparison with, or in competition with, the "Caloric" furnace, with a view to ascertaining which was the more efficient and what, if any, changes or modifications might be made to either furnace to enable the merged companies to manufacture an efficient and cheaper furnace. The data concerning the tests of the "Homaker" was recorded and kept by its chief engineer, Mr. De-Camp, who was the head of the engineering department of the plaintiff company. It is claimed, and the evidence tends to show, that the Williamson furnace, under test firing, overheated. This may have suggested some changes in the furnace. The fact that this test was made in the Monitor plant would surely not prevent Mr. DeCamp, who was in charge of the test, and who was the employe of the Williamson Company, from making such changes in the furnace, if any, as he determined were necessary to correct any defect that

was disclosed by the test. The evidence of all witnesses is to the effect that no changes were made in the Williamson furnace because of any data furnished by Doyle who was in charge of the test of the Monitor furnace. It appears that some changes may have been made in the "Homaker" after these tests, but these changes were light, and consisted mostly in a slight change in the dimensions of the firepot, and, perhaps, in some other portions of the furnace. We find from the evidence that no unfair or improper use was made by the defendants of the tests made under the circumstances stated.

The charge of an attempt to break down the sales organization of the plaintiff by making a concerted attack upon its salesmen and branch managers is not sustained by the evidence. The fact, as disclosed by the evidence, is that the Williamson Heater 'Company, as part of a program for making an aggressive sales campaign in 1921, determined to increase its sales force from approximately twenty men to about thirty-five or forty. It is shown that it employed eighteen men who had at some time been in the employ of the Monitor Stove Company. Of these eighteen, nine had either been discharged or had left the employ of the plaintiff. Of the other nine the evidence fairly shows that they sought employment from the defendants and were at the time under no contract with the Monitor Company that was not terminable at the will of either the salesmen or the company. The evidence is in dispute as to whether certain branch managers sought employment from the defendants or the defendants sought to obtain the services of these branch managers,

but in any event the evidence shows that if the defendants did undertake to obtain the services of these branch managers their efforts were without avail. We find that the evidence wholly fails to sustain the claims of the plaintiff with reference to the alleged attack upon the sales force of the plaintiff company.

This court cannot and does not undertake to determine any question as to the validity or priority of any patents pertaining to pipeless furnaces. The only patent claimed by the defendant company is an interest in the Rainey patent, and we find in the advertising matter of the defendant nothing that can be construed as a claim to the Doyle-Wollenhaupt patents or that defendant is manufacturing any product by virtue of such patents.

The plaintiff earnestly contends that the defendants made improper use of a list of customers and dealers of the Monitor Stove Company that had been wrongfully obtained from its offices. This list is known in this case as Exhibit No. 75. The court of common pleas appointed a special master commissioner to take evidence concerning this list and the uses made of it, and this was done, and the evidence is preserved in a large volume. At the time Mr. Woodrough severed his connection with the Monitor Stove Company he requested Mr. McCann to have Bernhart, another employe of the Monitor Stove Company, send him a list of the dealers. This request was complied with and Bernhart sent the list to Woodrough by another employe of the Monitor Stove Company, Mr. Baer. Woodrough states that his purpose was to have this list so that he might, if he de-

sired, give his side of the controversy between himself and the other Monitor officers to these dealers with whom he had had relations for many years. The evidence shows, however, that after Woodrough and McGrath and McCann had for some eight or nine months been endeavoring to find a business opening, they entered into the employment of the Williamson Heater Company, and that at that time this list was turned over to the possession of Mr. Jenson, a former Monitor employe, who was then the advertising manager of Williamson company. It is shown that this list was used to send out the first letter above referred to, containing the pictures of Woodrough, McGrath and McCann. No further use appears to have been made of this list until some time later, when the sales manager directed that a list of dealers be made up for the purpose of a mailing list, and after this list of about ten thousand names was made up from an examination of Dun's and Bradstreet's reports, and from the former mailing list of the Williamson Heater Company, McGrath ordered the list to be checked against the Monitor list, with instructions to add any names appearing upon that list which were not upon the list that had been prepared from the sources stated. Upon the trial of the case in the court of common pleas the defendants were for some days unable to produce this Exhibit No. 75, but it was afterwards discovered by one of the stenographers in a drawer of her desk where she states she had placed it and forgotten all about its having been placed there. We think the evidence of this witness is entirely unimpeached and is entitled to credit. There is strong evidence, however, tending

to show that the list produced by her was not the original list delivered to Woodrough, for the evidence is to the effect that the Monitor Company at no time used the brand of paper upon which this list was written and that the color of the typewriter ribbon was different from that that had been used in the Monitor offices. The evidence of the plaintiff tends to show that in addition to the names and addresses upon the list furnished to Woodrough there was also information as to the sales that had been made to various dealers whose names were upon the list. It is apparent that such a list, containing such information, would be of value to a competitor and that it would be unfair trade competition for a competitor to wrongfully secure possession of and make use of such a confidential trade list, and this is true even though the names of the dealers contained upon that list might be obtained from other sources. We therefore find that this list, wrongfully obtained from the plaintiff company by Woodrough, and also wrongfully obtained by the Williamson company, although it does not appear that either A. W. Williamson or W. C. Williamson knew of its use by the Williamson company, is one that the defendant company could not lawfully make use of in soliciting the trade and business of persons named upon that list, except those with whom it had previously dealt or with whom it had prospective business or otherwise, as found by the master commissioner and the court in the classification of the list made by the commissioner and the court. Courts of equity are not called upon to regulate the ethics of commercial competition, but will only restrain the invasion of legal rights where there

is no adequate remedy at law. We think perhaps undue importance has been attached to the subject of the use of this list. The names of the dealers, with the exception of twenty-five or thirty, according to the evidence, were obtained from Dun's and Bradstreet's reports, and the use of these reports for this purpose cannot be made a monopoly by any concern, but the use of the list, Exhibit No. 75, in connection with the mailing list made up from the commercial reports, gave to the defendant company an unfair trade advantage that should be restrained by a court of equity for such length of time as would prevent any injustice that would arise from the use of the list.

Upon an examination of this entire record we find against the plaintiff and in favor of the defendants on every issue except that with reference to the use of the list known as Exhibit No. 75, and as to that list a decree may be drawn in the same form as the decree in the common pleas court, so far as it relates to the list and its use, except that the injunction shall not extend beyond January 1, 1926. The decree shall also provide that the costs shall be paid one-half by the plaintiff and one-half by the defendants.

*Decree accordingly.*

KINKADE and RICHARDS, JJ., concur.

Judges of the Sixth Appellate District sitting in place of Judges CUSHING, BUCHWALTER and HAMILTON, of the First Appellate District.